CHARLES B. DALTON *vs.* HENRY J. LESSARD.

Cumberland.        Opinion, November 8, 1938.

*Gould & Shackley,* for plaintiff.
*Francis W. Sullivan,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

THAXTER, J. This action on a writ of entry was brought August 5, 1937 to recover possession of certain real estate situated in Portland. The case was referred, and to the acceptance of the Referee's report, which held that the plaintiff was entitled to judgment, the defendant excepted.

The facts are not in dispute. On February 16, 1921, the defendant leased the premises in question to the plaintiff for a term of twenty years from April 18, 1921. On March 24, 1921 the plaintiff assigned his rights in the lease to one True as collateral security for some independent obligation. On May 5, 1921 the plaintiff entered into an agreement with Rosenberg Brothers, a partnership, under the terms of which Rosenberg Brothers were to erect certain buildings on the property, and the lease was to be assigned to them. On the same day True, under instructions from the plaintiff, assigned the lease to Rosenberg Brothers, who subsequently assigned to Rosenberg Brothers, Inc., a corporation which was adjudicated a bankrupt September 28, 1935. On October 5, 1936 the trustee in bankruptcy of the above corporation conveyed the interest of the bankrupt to the plaintiff.

These various assignments, subleases, and reassignments have but little to do with the point at issue before us. In spite of them all, the Referee has found that the plaintiff, at least from July 6, 1921 to the time of the commencement of the action, had been entitled under the lease to the rights of a lessee of the property as against the defendant, and that the defendant in taking possession on March 16, 1935 disseized the plaintiff. The defendant, however, claims a right to possession of the premises by reason of the following facts.

Under the provisions of the lease, the lessee covenanted and agreed to pay all taxes assessed against the premises during the term. There was a breach of this covenant. For non-payment of taxes for the year 1932, the collector of the City of Portland had sold the property. A tax deed was executed by the collector, delivered to the City of Portland, and held by its treasurer during the two-year period within which the property might have been redeemed. About a month thereafter, the defendant, the lessor of the premises, purchased the property of the city and received and re-

corded the quitclaim deed therefor. It is on this deed that he bases his claim of title.

Against such contention the plaintiff calls attention to the following provision of the lease: "And it is mutually agreed and understood that the Lessor may enter to view the premises and that in the event that the said Lessee shall violate or shall become in default of any of his covenants under this lease, especially that as to waste, which default or breach shall continue for sixty (60) days after written notice thereof by said Lessor, said written notice to be given in hand to the Lessee or if after reasonable search the Lessee cannot be found, to be left at the Lessee's last or usual place of abode, the buildings and fixtures on the leased premises shall become the property of the Lessor without any appraisal or any payment therefor and this lease shall thereupon become null and void and the term hereof ended." No notice of any default had been given to the plaintiff in compliance with this provision, and he claims that accordingly he still remained a tenant of the lessor in spite of the lessor's deed from the city. His contention is well founded.

The defendant admits that a mortgagor can not buy in a tax title and assert it successfully against a mortgagee, *Dunn* v. *Snell,* 74 Me., 22 ; *Phinney* v. *Day*, 76 Me., 83 ; that a life tenant, on whom is the burden to pay taxes, can not successfully set up a tax title as against a remainderman, *Varney* v. *Stevens*, 22 Me., 331 ; that a tenant, whose duty it is to pay taxes, can not enforce such a title against his landlord, *Haskell* v. *Putnam*, 42 Me., 244. Defendant's counsel argues that in each of these cases the claimant, on whom was the obligation to pay the taxes, was attempting in asserting the tax title to take advantage of his own default in failing to pay, and that the cases are not in point because in the instant case, the obligation to pay the tax being on the lessee, the property was not being claimed by one who was himself in default. But the reasons underlying the general doctrine go much deeper than counsel assumes.

In *Smith* v. *Specht*, 58 N. J. Eq., 47, 42 A., 599, a broad dictum is laid down that a tenant, even though the duty to pay a tax is on the landlord, can not buy in the property at a tax sale and hold it against his lessor.

In *Waggener* v. *McLaughlin*, 33 Ark., 195, it is held that a tenant purchasing a tax title can not in equity found a claim on it

hostile to his landlord, even though it was the landlord who was in default for the non-payment of the taxes. He holds such property in trust.

See also Note 89, Am. Stat. Rep. 84; Note 15, Am. Dec. 690; Note 53, L. R. A. 940.

The decisive factor is not that the obligation to pay the tax rests on the one asserting the title, but the real question is whether on broad equitable grounds he should be estopped to assert the title which he holds.

In the case before us this defendant, the lessor of these premises, agreed that there should be no forfeiture until the expiration of sixty days after written notice of a default should be given by the lessor to the lessee. No such notice was given. The plaintiff, in accordance with the terms of the lease, remained the tenant of the defendant, and the defendant in contravention of that agreement could not sever that relationship by the purchase of the tax title acquired by the City of Portland.

The lessee was by the agreement of the parties given a certain time to make good a default; he was in a position analogous to that of a mortgagor who had a definite period within which to redeem. The other party could not by the purchase of a tax title cut off that right.

*Exception overruled.*